******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE NATALIA M.*
(AC 42512)

Alvord, Bright and Bear, Js.

*Syllabus*

The respondent father appealed to this court from the judgment of the trial court terminating his parental rights with respect to his minor child. He claimed that the trial court erroneously concluded that the Department of Children and Families had made reasonable efforts at reunification pursuant to the statute (§ 17a-112 [j] [1]) that requires a trial court to find by clear and convincing evidence that the department made reasonable efforts to reunify a parent and child unless it finds, instead, that the parent is unable or unwilling to benefit from such efforts. The trial court also found, pursuant to §17a-112 (j) (1), that the father was unable or unwilling to benefit from reunification efforts. *Held* that because the respondent father, who did not challenge the trial court's finding that he was unable or unwilling to benefit from reunification efforts, challenged only one of the two separate and independent bases for upholding the trial court's determination that the requirements of § 17a-112 (j) (1) had been satisfied, there existed a separate independent basis for upholding the court's determination, and, therefore, even if this court agreed with the father's claim, there was no practical relief that could be afforded to him; accordingly, the appeal was dismissed as moot.

Argued May 14—officially released June 3, 2019**

*Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior Court in the judicial district of New Haven, Juvenile Matters, where the matter was tried to the court, *Conway, J.*; judgment terminating the respondents' parental rights, from which the respondent father appealed to this court. *Appeal dismissed.*

*David J. Reich*, for the appellant (respondent father).

*Seon A. Bagot*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, *Benjamin Zivyon*, assistant attorney general, *Stephen G. Vitelli*, assistant attorney general, and *Evan O'Roark*, assistant attorney general, for the appellee (petitioner).

*Ingrid Swanson*, for the minor child.

*Opinion*

PER CURIAM. The respondent father, Paul R., appeals from the judgment of the trial court terminating his parental rights with respect to his daughter, Natalia M. (child), pursuant to General Statutes § 17a-112 (j) (3) (B) (i).[1] On appeal, the respondent claims that the Department of Children and Families (department) violated his rights to due process of law by failing to provide adequate visitation with his child, which, he claims, ultimately led the court to terminate his parental rights after erroneously concluding that the department had made reasonable efforts at reunification, pursuant to § 17a-112 (j) (1).[2] The respondent does not claim that the court erred in its conclusion that he was unable or unwilling to benefit from reunification efforts. Because the respondent challenges only one of the two bases for the court's determination that § 17a-112 (j) (1) had been satisfied, we conclude that the respondent's appeal is moot.

The child was born in November, 2016. From the time of her birth, the department was involved in attempting to assist the child and her mother. On December 2, 2016, members of the New Haven Police Department were dispatched to the Three Judges Motel in New Haven (motel) to investigate a stabbing. The child's mother, the child, and, at times, the respondent were staying at the motel. The boyfriend of the child's mother came to the motel and was holding the child when the respondent returned to the motel. A scuffle ensued and the boyfriend, who was injured and bleeding, accused the respondent of stabbing him. During their search of the scene, the police found narcotics.[3]

The petitioner, the Commissioner of Children and Families (commissioner), took temporary custody of the child and filed a neglect petition. The court issued an order of temporary custody on December 6, 2016. Pursuant to the court's order, the respondent was given specific steps, including domestic violence and substance abuse treatment, as well as the requirement that he cooperate with service providers. The respondent failed to comply with these steps. The respondent also questioned whether he was the father of the child. The respondent had no contact with the child between December 2, 2016 and April, 2017, when his paternity was confirmed. Even after he knew he was the child's father, the respondent ignored letters from the department offering him visitation with the child, and he had no contact with her because he was attempting to avoid being served with a warrant for his arrest.

On May 18, 2017, the court adjudicated the child, who has serious health concerns, neglected, and it committed her to the custody of the commissioner. The court also ordered final specific steps for the respondent, with which he also failed to comply. In August, 2017,

the respondent was arrested on charges unrelated to the alleged stabbing and narcotics incident, and, thereafter, he expressed an interest in visiting with the child. On October 5, 2017, a permanency plan, which proposed termination of both parents' rights and adoption, and to which the respondent objected, was approved by the court. Following this approval, the department met with the respondent to discuss visitation and the child's medical needs. The department was concerned about the toll it would take on the child's health for her to endure a two hour commute to the prison, and it expressed that concern to the respondent, who agreed that visitation should not occur until the child's health improved.

On December 5, 2017, the commissioner filed a petition for the termination of the parental rights of the respondent and the child's mother.[4] The respondent underwent a psychological evaluation on April 3, 2018, which included an interactive session with the respondent and the child. Following the evaluation, the psychologist determined that the respondent had little understanding regarding the needs of the child or the impact of his actions on her. In May, 2018, the department began taking the child to the prison to visit with the respondent, the child's health having improved. From May, 2018 through November, 2018, the department took the child to the prison for visitation approximately once or twice per month, depending, primarily, on the child's health.[5] On November 28, 2018, the court held a hearing on the petition for termination of parental rights. The court rendered judgment terminating such rights on December 12, 2018. Specifically, the court found in relevant part that (1) the department had made reasonable efforts at reunification and (2) the respondent was unable or unwilling to benefit from those efforts at reunification.

The respondent appeals from that judgment on the sole ground that the court erred in finding that the department had made reasonable efforts at reunification. He argues that this finding was in error because the department had violated his right to due process by failing to provide him with adequate visitation with the child prior to his April 3, 2018 psychological evaluation, at which time the psychologist had observed his interactions with the child, with whom the respondent had not had the benefit of prior visitation.

The commissioner argues that the respondent's appeal should be dismissed as moot because the respondent challenges only one of the two bases for the court's determination that the requirements of § 17a-112 (j) (1) had been satisfied. She contends that even if the respondent is successful in the claim he raises on appeal, there is no relief that can be afforded to him because there exists a separate independent basis for upholding the court's determination and it is unchallenged by the respondent. We agree and conclude that

the respondent's appeal is moot because there is no practical relief that we could afford to him on appeal.

"Mootness raises the issue of a court's subject matter jurisdiction . . . . Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [a] court's subject matter jurisdiction . . . . We begin with the four part test for justiciability . . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . [I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Citations omitted; emphasis altered; internal quotation marks omitted.) In re Jorden R., 293 Conn. 539, 555–56, 979 A.2d 469 (2009).

Section 17a-112 (j) (1) "requires a trial court to find by clear and convincing evidence that the department made reasonable efforts to reunify a parent and child *unless it finds instead* that the parent is unable or unwilling to benefit from such efforts. In other words, either finding, standing alone, provides an independent basis for satisfying § 17a-112 (j) (1)." (Emphasis altered.) Id., 556. In the present case, the court found that both alternatives set forth in § 17a-112 (j) (1) had been satisfied—the department had made reasonable efforts to reunify the respondent with the child, *and* the respondent was unable or unwilling to benefit from reunification efforts.

Because the respondent challenges only one of the two separate and independent bases for upholding the court's determination that the requirements of § 17a-112 (j) (1) had been satisfied, even if we were to agree with his claim, the fact that there is a second independent basis for upholding the court's determination, which he does not challenge, renders us unable to provide him with any practical relief on appeal.

The appeal is dismissed.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** June 3, 2019, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Specifically, the court found, by clear and convincing evidence, that "[t]he child has been found in a prior proceeding to have been neglected

. . . AND the father has . . . failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, [he] could assume a reasonable position in the life of the child . . . .'' The court also found that termination of the respondent's parental rights would be in the best interest of the child, pursuant to § 17a-112 (j) (2).

[2] General Statutes § 17a-112 (j) (1) provides in relevant part: ''The Superior Court . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the [department] has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . .''

[3] The respondent was arrested and charged with various crimes. He has a long criminal record and drug abuse history, which continued even after the start of these proceedings. For most of these proceedings, the respondent was in prison.

[4] The child's mother consented to the termination of her parental rights and is not a party to this appeal.

[5] One visit in October, 2018, was canceled because the department's visitation supervisor was ill.